

**FILED**

OCT 1 5 2019

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> WILLIAM T. GANGEMI, ) <br> ) <br> Defendant. ) | Case No. **19 CR 216 JED** <br><br> **INFORMATION** <br> [18 U.S.C. § 371: Conspiracy] |

**THE UNITED STATES ATTORNEY CHARGES:**

### Relevant Wildlife Statutes and Regulations

A.   <u>The Lacey Act</u>

1.   The Lacey Act Amendments of 1981, 16 U.S.C. §§ 3371 *et seq.*, (hereinafter "the Lacey Act"), make it makes it unlawful for any person to import, export, transport, sell, receive, acquire, or purchase any fish or wildlife or plant taken, possessed, transported, or sold in violation of any law, treaty, or regulation of the United States. 16 U.S.C. § 3372(a)(2).

2.   The Lacey Act makes it a felony to knowingly engage in conduct that involves the sale or purchase of, the offer of sale or purchase of, or the intent to sell or purchase, fish or wildlife or plants with a market value in excess of $350.00, knowing that the fish or wildlife or plants were taken, possessed, transported, or sold in violation of, or in a manner unlawful under, any underlying law, treaty or regulation of the United States. 16 U.S.C. §§ 3372(a)(1), 3372(a)(2)(A) and 3373(d)(1)(B).

B.   <u>Oklahoma Wildlife Conservation Code</u>

3.     Pursuant to Oklahoma state law Title 29 (Game and Fish Statutes), except as otherwise provided for in the Oklahoma Wildlife Conservation Code or the Oklahoma Farmed Cervidae Act, no person may hunt, pursue, trap, harass, catch, kill, take or attempt to take in any manner, use, have in possession, sell, or transport all or any portion of any wildlife except fish, without having first procured a license from the Department of Wildlife Conservation ("Department"). O.S. Title 29 § T.29:4-112.A. Except as otherwise provided for by law, no person may buy, barter, trade, sell or offer, or expose for sale all or any part of any fish or wildlife or the nest or eggs of any bird, protected by law. O.S. Title 29 § 29:7-503.A. Except as otherwise provided by law, no person may ship into or out of, transport into or out of, have in possession with the intent to so transport, or cause to be removed from this state wildlife or parts thereof, nests of wildlife, their eggs or their young. O.S. Title 29 § 7-602.A.1

4.     In addition, pursuant to Oklahoma State Administrative Code, it shall be unlawful to engage in any commercial activities involving any species or subspecies, if more than one exists, of reptiles or amphibians collected from the wild that are indigenous to or whose range extends into the State of Oklahoma, except for provisions for rattlesnakes, water turtles and aquatic salamanders (*Necturus* and *Ambystoma*, except *Ambystoma talpodium* and *Ambystoma annulatum*). In addition, any person while in the act of taking or attempting to take reptiles and amphibians or possessing reptiles or amphibians must first possess a resident or nonresident hunting license, unless otherwise exempt, for land dwelling reptiles or amphibians (Exceptions to this provision not applicable to box turtles).

Title 800:25-7-7. There is no closed season for box turtles and the daily bag limit and possession limit is six (6). Title 800:25-7-8 (1)(2). Unless otherwise provided for in State Statute or administrative rules, anyone shipping or otherwise transporting wildlife, other than raptors, into or out of the State of Oklahoma must first have authorization from the Department. A fee will be changed to cover the costs of processing and handling the issuance of the permit. The issuance of an import or export authorization number shall constitute written authority from the Department for such import or export. Title 800:25-23-2(a).

### Objective of the Conspiracy

5.     Between on or about May 1, 2017, and May 31, 2018, in the Northern District of Oklahoma and elsewhere, the defendant, **WILLIAM T. GANGEMI,** and others known to the United States did knowingly combine, conspire, confederate, and agree, together with others known and unknown, to commit offenses against the United States, namely:

a.     to knowingly sell, receive, acquire, or purchase wildlife, specifically *Terapene Carolina trunguis* (three-toed box turtle) and *Terapene Ornata* (Western box turtle), in interstate commerce, with a market value in excess of $350.00, knowing that said wildlife was transported out of Oklahoma, and possessed with the intent to so transport, in violation of Oklahoma law, specifically O.S. Title 29 § 29:7-503.A. and O.S. Title 29 § 7-602.A.1. Such conduct is prohibited by the Lacey Act, at Title 16, United States Code, Sections 3372(a)(2)(A), and 3373(d)(1)(B).

## The Manner and Means of the Conspiracy

In order to achieve the objective of the conspiracy:

6. Defendant **WILLIAM T. GANGEMI**, and others engaged in the sale of animals in the state of New Jersey and elsewhere.

7. In May of 2017, **WILLIAM T. GANGEMI** told Co-conspirator 1, that **WILLIAM T. GANGEMI** would buy any turtles that Co-conspirator 1 could catch in Oklahoma for $25 US dollars each.

8. Co-conspirator 1 collected turtles from Oklahoma and delivered them to Co-conspirator 2, and **WILLIAM T. GANGEMI**.

9. In return, **WILLIAM T. GANGEMI** sent, or caused to be sent, payment to Co-conspirator 1 via a money wire.

## Overt Acts

10. In furtherance of the conspiracy and in order to achieve its objective, the defendant, **WILLIAM T. GANGEMI**, Co-conspirator 1, and Co-conspirator 2, along with others, committed or caused to be committed the following overt acts in the Northern District of Oklahoma and elsewhere:

    a. In May of 2017, Co-conspirator 1 collected approximately 800 turtles in Oklahoma, and shipped them to a FedEx Shipping Center address of 210 Industrial Way West, Eatontown, New Jersey, and to the attention of **WILLIAM T. GANGEMI**. These parcels were shipped from Tulsa Oklahoma Fedex Shipping Center and had this location listed as the origin. Co-conspirator 1 made approximately $20,000

during May 2017 from selling box turtles to **WILLIAM T. GANGEMI**.

    b.  On May 9, 2018, Co-conspirator 1 shipped 63 Three-toed box turtles to **WILLIAM T. GANGEMI**. **WILLIAM T. GANGEMI** provided a $500 deposit for this shipment and when he received the shipment he wired $1,075 to Co-conspirator 1.

    c.  On May 14, 2018, Co-conspirator 1 sent another shipment of 150 Three-Toed box turtles to **WILLIAM T. GANGEMI**. Co-conspirator 1 did not require a deposit for this shipment. Co-conspirator 1 received two (2) money wires for this shipment because Walmart maximum amount per wire is $2,500. Co-conspirator 1 received one wire for $2,500 and another for $1,250.

    d.  On May 17, 2018, Co-conspirator 1 sent another shipment of 150 Three-Toed box turtles and 13 Western box turtles to **WILLIAM T. GANGEMI**. **WILLIAM T. GANGEMI** sent a money wire of $2,500 on this same date and sent another money wire on May 20, 2018, in the amount of $1,250.

    e.  On May 22, 2018, Co-conspirator 1 sent 75 turtles to **WILLIAM T. GANGEMI**. On May 23, 2018, **WILLIAM T. GANGEMI** received the package at the FedEx Shipping Center address of 210 Industrial Way West, Eatontown, New Jersey.

    f.  On May 23, 2018, Co-conspirator 1 sent 75 turtles to **WILLIAM T. GANGEMI**. On May 24, 2018, Co-conspirator 1 received a Walmart money order from **WILLIAM T. GANGEMI** is the amount of $2,500.

    g.  On May 27, 2018, Co-conspirator 1 received notification from **WILLIAM T. GANGEMI** that a money wire was available for pickup at Walmart.

Co-conspirator 1 went to the Walmart in Glenpool, Oklahoma and received the money and receipt for the money wire for $1210.00

All in violation of Title 18, United States Code, Section 371.

R. TRENT SHORES
UNITED STATES ATTORNEY

_____
RYAN M. ROBERTS
Assistant United States Attorney.